Steven GOURRIER, Appellant,

v.

JOE MYERS MOTORS, INC. d/b/a Joe Myers Mitsubishi, Appellee.

No. 14–00–01165–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 8, 2002.

Joseph Michael Gourrier, Houston, Robert William Higgason, Woodlands, for appellant.

William T. Little, Houston, for appellee.

Panel consists of Chief Justice BRISTER and Justices FOWLER and SEYMORE.

### CORRECTED OPINION

SCOTT BRISTER, Chief Justice.

This opinion is issued after the expiration of this Court's plenary power and corrects the names of the panel members. *See* TEX. R. APP. P. 19.3(a). We withdraw our opinion of May 23, 2002, and issue the following in its place.

The appellant, Steven Gourrier, purchased a used car and extended warranty from appellee Joe Myers Motors, Inc. ("Myers"). Three years and more than 80,000 miles later, the vehicle began leaking engine oil, and another dealer refused to repair the car under the warranty because it was beyond the 100,000–mile limit. Because he could not get the car fixed for free, Gourrier continued to drive it without any repairs until it became inoperable. He then quit making monthly payments on the car, and it was repossessed. Alleging errors in the documents relating to his initial purchase, Gourrier says he is entitled to a refund of all his money (without offset for three years of heavy driving),

and more besides. We agree with the trial court that he is not.

The facts are undisputed. On July 6, 1995, Gourrier purchased a used 1994 Mitsubishi Diamante wagon from Myers, which represented that it owned the wagon and had authority to sell it. Myers had given a sight draft to Dealer's Auto Auction for the vehicle, but had not yet paid the draft. Gourrier signed a Retail Installment Contract and a Power of Attorney at the dealership. Myers assigned the Installment Contract to Arcadia Financial Ltd. on July 21, 1995 for $18,662.12, and used the money from Arcadia to pay the Dealer's Auto Auction sight draft. Myers received the wagon's certificate of title from Dealer's on August 2, 1995, typed and signed Gourrier's name on the certificate,[1] and forwarded it to him.

Gourrier initially sued two other parties on January 26, 1999 for failing to provide warranty service,[2] and added Myers as a defendant in June of 1999. In his Second Amended Original Petition, he alleged Myers violated (1) the federal Motor Vehicle and Cost Savings Act (the Federal Odometer Act), (2) the Texas Certificate of Title Act, (3) the federal Truth in Lending Act (TILA), (4) the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA), as well as claims against Myers for (5) fraud, (6) breach of fiduciary duty, (7) respondeat superior, and (8) negligence.

## I. Adequate Time for Discovery

■ In his first point of error, Gourrier contends that the trial court abused its discretion by granting the dealership's no-evidence motion without giving him an adequate time for discovery. *See* TEX. R.

Civ. P. 166a(i). An adequate time for discovery depends upon the nature of the claims, the evidence needed to controvert the motion, the length of time the case has been on file, and deadlines set by the court. *See Specialty Retailers, Inc. v. Fuqua,* 29 S.W.3d 140, 145 (Tex.App.—Houston [14th Dist.] 2000, pet. denied). We review a trial court's determination of an adequate time for discovery for an abuse of discretion. *Id.*

Although no scheduling order is included in our record on appeal, the parties' pleadings refer to a summary-judgment deadline of February 21, 2000, and a discovery deadline of March 20, 2000. Myers filed its motion for summary judgment on February 15, 2000, one week before the deadline. Gourrier filed no response, but did file his own motion for partial summary judgment one week later. We consider the evidence raised in Gourrier's motion in reviewing both motions. *Martin v. Harris County Appraisal Dist.,* 44 S.W.3d 190, 193 (Tex.App.—Houston [14th Dist.] 2001, pet. denied).

■ "A discovery period set by pretrial order should be adequate opportunity for discovery unless there is a showing to the contrary, and ordinarily a motion ... would be permitted after the period but not before." TEX. R. CIV. P. 166a cmt. (1997). While the dealership's motion in this case was filed a month before the discovery deadline, the trial court's summary judgment deadline required it to do so. Because a motion for summary judgment sometimes suggests the need for additional discovery, we do not read the comment to prohibit a motion deadline placed thirty days before the discovery deadline.

---

1. This was done pursuant to the power of attorney, which Myers obtained for that purpose.

2. These were Charlie Thomas Chevrolet, Inc. and Mitsubishi Motors, both of whom settled with him.

■ Gourrier filed a motion to continue the summary judgment to allow him to conduct additional discovery. *See* TEX. R. CIV. P. 166a(g). Our record contains no ruling on the motion, although it appears the summary judgment was not granted until almost a month after Myers set it for submission. But in any event, nothing in the motion shows an inadequate time for discovery or that further discovery would have added anything except unnecessary expense.

In his verified motion, Gourrier complained that Myers had not responded sufficiently to his 118 requests for admission, 79 requests for production (including subparts), 17 interrogatories, and all 11 standard disclosure items. A review of those responses shows that Myers admitted the authenticity of the documents on which Gourrier based his claims, objecting only to his *characterization* of those documents, or requests for similar documents relating to *other customers*.

The transaction that spawned this litigation is commonplace: the sale and financing of a used car. Gourrier's only contact with Myers was the sale, which took place almost five years before the motion for summary judgment was granted. His claims relate solely to the documents he was given, and raise only questions of law regarding their adequacy. His damages would have been within his own knowledge. The case had been on file for nearly fourteen months (ten months against Myers), and Gourrier does not claim he was unaware of the impending motion and discovery deadlines. We hold Gourrier had adequate time for discovery under these circumstances. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.,* 907 S.W.2d 517, 521 (Tex.

1995) (holding extensive discovery unnecessary in summary judgment based on unambiguous documents). Thus, the trial court did not abuse its discretion, and we overrule Gourrier's first point.

## II. Specificity of the Motion

■ Appellant next complains that Myers's motion was not specific enough. *See* TEX. R. CIV. P. 166a cmt. (1997) (stating the motion "must be specific in challenging the evidentiary support for an element of a claim or defense"). Gourrier raises this complaint for the first time on appeal, as we have held a nonmovant may do. *See Cuyler v. Minns,* 60 S.W.3d 209, 213 (Tex.App.—Houston [14th Dist.] 2001, pet. denied). Although the dealership challenged 41 elements or combinations of elements in Gourrier's causes of action, it referenced the specific page and paragraph numbers [3] of his petition where each of these identified elements were alleged. Because the motion is sufficiently specific, we overrule Gourrier's second point of error.

## III. The Federal Odometer Act

■ In Gourrier's third point of error, he complains that the trial court erred in granting Myers's motion because he raised some evidence supporting each of his many claims. Turning to the first of these, Gourrier alleges the dealership violated the Federal Odometer Act (49 U.S.C. §§ 32701—32711), with intent to defraud him, by:

- failing to provide him with the required odometer disclosure *on* the certificate of title;
- typing and signing his name on the certificate of title;

and 120 numbered paragraphs.

---

**3.** Gourrier's Second Amended Original Petition contained seventeen separate sections

- failing to fulfill the requirements for the power of attorney form; and
- failing to submit the power of attorney form to the State of Texas.

■ In response, the dealership alleged there is no evidence that it acted with intent to defraud, a statutory prerequisite to civil liability. *See* § 32710(a); *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 806 (7th Cir.1988) (interpreting identical language in prior version of statute). Intent to defraud may be inferred if a transferor lacks knowledge of the disclosure violation only because he "displayed a reckless disregard for the truth" or because he "closed his eyes to the truth." *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1282 (10th Cir.1998).

The summary judgment evidence includes an odometer disclosure statement signed by Gourrier on the date of sale that disclosed the vehicle's correct mileage. It is true Gourrier did not personally sign the odometer section *on* the certificate of title. But when, as here, a lienholder has possession of the certificate of title at the time of the transfer of ownership, a dealership may use an odometer disclosure statement and power of attorney to complete the required section on the certificate of title once it is received. *See* 49 U.S.C. § 32705(b)(2)(A). Although Gourrier argues the form used by Myers did not comply with the regulations set out in 49 C.F.R. section 580.13, this is no evidence he was defrauded about the vehicle's mile-

age. Thus, the trial court properly granted Myers's motion on this ground.

### IV.  The Texas Certificate of Title Act and Fraud

■ Gourrier also alleged the dealership violated the Texas Certificate of Title Act,[4] by:

- failing to disclose that Dealer's Auto Auction of Dallas held a lien on the vehicle by reason of its physical possession of the certificate of title;
- failing to deliver the certificate of title to Gourrier on the date of sale; and
- signing Gourrier's name on the assignment of the certificate of title and on the application for certificate of title without legal authority.

■ The Act does not provide for an independent cause of action for violations;[5] instead it renders void any transfer of title until the requirements of the Act are met. *See* Certificate of Title Act, 46th Leg., R.S., ch. 4, 1939 Tex. Gen. Laws 602, 606 & 610 (TEX. REV. CIV. STAT. arts. 6687–1, §§ 33 & 53, repealed and codified at TEX. TRANS. CODE §§ 501.071 & 501.073). Non-compliance does not affect a sale "as between the parties, when the purposes of the Certificate of Title Act are not defeated." *Gramercy Ins. Co. v. Arcadia Fin., Ltd.*, 32 S.W.3d 402, 408 (Tex.App.—Houston [14th Dist.] 2000, no pet.).

The dealership asserted its acts caused Gourrier no damage. It is undisputed that Gourrier received a certificate of title, and

---

**4.** At the time the dealership transferred title to Gourrier on July 6, 1995, the applicable statute was Texas Revised Civil Statute article 6687–1. Certificate of Title Act, 46th Leg., R.S., ch. 4, 1939 Tex. Gen. Laws 602 (repealed and codified at TEX. TRANS. CODE §§ 501.001—501.159).

**5.** The act establishes criminal liability for failing to transfer or possess title at the time of sale of the vehicle. *See* Certificate of Title

Act, 46th Leg., R.S., ch. 4, 1939 Tex. Gen. Laws 602, 610 (TEX. REV. CIV. STAT. art. 6687–1, § 51, repealed and codified at TEX. TRANS. CODE § 501.152); Act of March 18, 1919, 36th Leg., R.S., ch. 138, § 4, 1919 Tex. Gen. Laws 253, 254 (TEX. REV. CIV. STAT. art. 6687–5, repealed and codified at TEX. TRANS. CODE § 520.022). But Gourrier has failed to show that the Legislature intended to provide a civil cause of action for these violations.

drove the vehicle for years without any title problems. He never knew of or paid anything to Dealer's Auto Auction concerning any lien. Even if one purpose of the Act is to prevent transfer without disclosure of liens, Gourrier does not explain how this applies to a lien that is extinguished upon sale. Thus, the trial court properly granted Myers's motion on these two grounds.

### V. The Truth In Lending Act

■ The Truth in Lending Act (TILA) provides for a private cause of action against any creditor who fails to provide "a written itemization of the amount financed," including "each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person." 15 U.S.C. § 1638(a)(2)(B)(iii). Gourrier's motion included:

- his retail installment contract, which under the heading "Amount paid to others on your behalf/itemized charges" contained a $1,500 item listed as "Fee for Warranty or Service Contract"; and

- a document called "Recap of Sale" providing that $1,500 for his extended warranty included $860 as "cost" and $640 as "warranty reserve."

Using only these sparse references, Gourrier cites *Gibson v. Bob Watson Chevrolet–Geo, Inc.* for the proposition that a dealer violates the TILA by failing to disclose that it was retaining some part of a listed fee. 112 F.3d 283, 286 (7th Cir. 1997).[6] First, nothing in either document

establishes that Myers kept this reserve. But more important, Gourrier has not established that he is entitled to damages. Statutory damages are unavailable for violations of section 1638(a)(2)(B)(iii). *See* 15 U.S.C. § 1640(a)(4) (stating statutory damages for violations of relevant subsection are only available if amount financed was not disclosed); *Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 916 (8th Cir.2000). While actual damages are available, the only summary judgment evidence is Gourrier's own statement that he would not have paid $1,500 if he had known Myers would retain $640. For recovery of actual damages for violations of TILA, courts have required some detrimental reliance. *See Peters*, 220 F.3d at 917 (requiring violation of § 1638(a)(2)(B)(iii) to be proximate cause of actual damages); *see also Perrone v. General Motors Acceptance Corp.*, 232 F.3d 433, 438–40 (5th Cir.2000) (requiring detrimental reliance to establish TILA claim for actual damages); *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir.2001) (same). Here, there is no evidence Gourrier even read the disclosure (much less misunderstood it) or that he could have *obtained* a lower charge from Myers or another dealer. *See Peters*, 220 F.3d at 917. Thus, the trial court properly granted Myers's motion on these grounds.

### VI. The DTPA

■ Gourrier alleged Myers violated the DTPA[7] by misrepresenting its ability to legally sell the vehicle and breaching an implied warranty of title. Myers asserted there was no evidence that any of these

---

6. Several other courts have followed the same construction. *See, e.g., Jones v. Bill Heard Chevrolet, Inc.*, 212 F.3d 1356, 1362 (11th Cir.2000); *Green v. Levis Motors, Inc.*, 179 F.3d 286, 293–94 (5th Cir.1999); *but see Baldwin v. Laurel Ford Lincoln–Mercury, Inc.*,

32 F.Supp.2d 894, 905 (S.D.Miss.1998) (citing the Federal Reserve Board's official staff interpretations, 12 C.F.R. pt. 226, Supp. I, ¶ 18(c)(1)(iii)(2)).

7. *See* Tex. Bus. & Com. Code § 17.50(a).

acts were the producing causes of any damages. As noted above, Gourrier did not discover these potential violations until after he stopped using the vehicle for reasons unrelated to any of them. Gourrier claims in his reply brief that his ownership was "significantly compromised," but the record shows he never had any problem with title until the car was repossessed when he stopped making payments on it. Having enjoyed three years and more than 80,000 miles of use, Gourrier has produced no evidence that he was damaged by any violations or misrepresentations he alleges. Thus, the trial court correctly granted Myers's motion on the DTPA claims.

### VII. The Consumer Credit Code

In one paragraph in his brief, Gourrier also asserts the summary judgment evidence establishes as a matter of law that Myers contracted for interest in excess of that allowed by the Texas Consumer Credit Code. While we appreciate brevity, from the conclusions stated in that paragraph we simply cannot tell what he is talking about. He alleges Myers overcharged him $924.11, without indicating what section of the Code provided the applicable interest limit. We cannot tell from the Retail Installment Contract (the only evidence he presented to support his claim) how his finance charge was calculated; indeed, we cannot tell whether the dealership even prepared it. While we disagree with Myers that some type of expert testimony was required, we agree that Gourrier had to do more than offer his installment contract and expect us to find usurious charges for him. We hold that Gourrier has not presented any error for our review. Tex. R. App. P. 38.1(h).

### VIII. Breach of Fiduciary Duty

Gourrier alleged Myers breached a fiduciary duty to him when it acted as his agent and represented that it would imme-

diately file documents with the tax assessor, but did not do so. Even assuming Myers had a fiduciary duty, there is no evidence that any delay in filing documents with the tax assessor breached that duty. Thus, the trial court properly granted Myers's motion on the fiduciary claims.

### IX. Conclusion

Having found there is no evidence of at least one element of each of Gourrier's claims, we find the trial court properly granted Myers's no-evidence summary judgment motion and overrule the third point of error.

Gourrier's fourth point of error complains of the trial court's failure to grant his own motion for partial summary judgment. Because we have found he failed to raise evidence on the challenged elements of each of his causes of action under point of error three, we necessarily find that he has not conclusively established the causes of action as a matter of law. Consequently, we overrule Gourrier's fourth point of error.

We affirm the trial court's judgment.