**Affirmed and Memorandum Opinion filed March 31, 2020.**



**In the**

**𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰**

## NO. 14-18-00418-CV

**CITY OF HOUSTON, Appellant**

**v.**

**HOUSTON PROFESSIONAL FIRE FIGHTERS' ASSOCIATION, LOCAL 341, Appellee**

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-19307**

## MEMORANDUM OPINION

The trial court rendered summary judgment confirming an arbitration award in favor of appellee Houston Professional Fire Fighters' Association, Local 341 (the Association) and dismissing a declaratory judgment action appealing the arbitration award brought by appellant City of Houston. The City contends the trial court erred in granting the Association's summary-judgment motion because the arbitrator (1) lacked jurisdiction when the Association's grievance was untimely,

(2) exceeded her jurisdiction by deciding a question that was not before her, (3) modified the law and terms of the collective bargaining agreement (CBA) at issue, and (4) exceeded her jurisdiction by ordering reinstatement of three firefighters. We affirm.

## I.  BACKGROUND

The City and the Association entered a CBA which included an agreement to arbitrate certain disputes. In cases proceeding to arbitration, CBA article 14 vested the arbitrator with the following authority:

> The arbitrator's authority shall be limited to the interpretation and application of the terms of this Agreement and/or any supplement thereto. The arbitrator shall have no jurisdiction or authority to establish provisions of a new agreement or variations of the present Agreement or to arbitrate away, in whole or in part, any provisions of amendments thereof.

The matter decided by the arbitrator in this case stemmed from a grievance filed by the Association after the Houston Fire Department terminated the employment of several permanent, non-probationary firefighters for failure to achieve paramedic certification.

## II.  ANALYSIS

### A. Standard of review

We first address the law governing our review of the arbitration award underlying the trial court's summary judgment. Neither the parties nor the CBA invokes the Federal Arbitration Act. *See* 9 U.S.C. §§ 1–16 (2018). Whether the Federal Arbitration Act applies to collective bargaining agreements is not clear under federal law. *See Int'l Ass'n of Machinists & Aerospace Workers Local Lodge 2121 AFL–CIO v. Goodrich Corp.*, 410 F.3d 204, 207 n.2 (5th Cir. 2005). The Supreme Court of Texas recently applied common-law arbitration principles to an

2

arbitration provision in a collective bargaining agreement involving constables in Jefferson County. *See Jefferson Cty. v. Jefferson Cty. Constables Ass'n*, 546 S.W.3d 661, 665 (Tex. 2018). Though the supreme court did not expressly address whether the Federal Arbitration Act applied, the court necessarily concluded that the Act did not apply, because courts only apply common-law arbitration principles if no arbitration statute applies. *See Beldon Roofing Co. v. Sunchase IV Homeowners' Ass'n, Inc.*, 494 S.W.3d 231, 237 (Tex. App.—Corpus Christi 2015, no pet.). Because in a similar circumstance the supreme court concluded that the Federal Arbitration Act did not apply, we reach the same conclusion in today's case. *See Jefferson Cty.*, 546 S.W.3d at 665.

By its own terms, the Uniform Arbitration Act does not apply, as it explicitly exempts collective bargaining agreements from its scope. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.002(a)(1). The Fire and Police Employee Relations Act cited in the City's brief applies only to arbitrations concerning an impasse in collective-bargaining negotiations, not disputes arising under an executed agreement. *See* Tex. Loc. Gov't Code Ann. § 174.153(a). Accordingly, we review the award under Texas common law. *See Jefferson Cty.*, 546 S.W.3d at 665 (reviewing arbitration award stemming from executed CBA under common law when no statute otherwise covered dispute). "'All reasonable presumptions are indulged in favor of the award, and none against it.'" *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002) (quoting *City of San Antonio v. McKenzie Constr. Co.*, 150 S.W.2d 989, 996 (Tex. 1941)). Accordingly, "[c]ommon-law grounds for vacating an arbitration award are exceedingly narrow and do not include an arbitrator's mere error in applying the law." *Jefferson Cty.*, 546 S.W.3d at 674.

## B. Timeliness of grievance

The City's first issue hinges on its position that the Association's grievance

3

was untimely. The grievance procedure outlined in CBA article 14 provided that the Association was required to file a grievance within 30 days of the date "upon which the association knew or should have known of the facts or events giving rise to the grievance." The City asserts the Association knew or should have known of the facts underlying its grievance as early as October 29, 2014, but did not file its grievance until January 14, 2015. The City concludes that, in ruling that the grievance was timely, the arbitrator exceeded her authority under the CBA, as the untimeliness of the grievance deprived the arbitrator of jurisdiction under the CBA's grievance procedures, which state that no further action may be taken if a grievance is not timely filed.

The common law allows vacatur of an arbitration award if the arbitrator exceeds the scope of her authority. *See Jefferson Cty.*, 546 S.W.3d at 665; *Gulf Oil Corp. v. Guidry*, 327 S.W.2d 406, 408 (Tex. 1959) ("[T]he authority of arbitrators is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by necessary implication."). Here, however, the CBA specifically tasked the arbitrator with "the interpretation and application of the terms" of the CBA. The plain language of this provision encompasses the terms in CBA article 14 concerning when a grievance must be filed, placing it squarely within the arbitrator's authority to determine the fact-bound question of whether the grievance was timely. *See Jefferson Cty.*, 546 S.W.3d at 674 ("The arbitrator's analysis . . . may or may not be correct, but it is precisely within the scope of his contractual authority to resolve '[a]ll disputes concerning the proper interpretation and application of' the CBA.").[1] We accordingly conclude that the

---

[1] The City argues that *Jefferson County* does not apply to this case because the Association "has not shown that the agreement in *Jefferson County Constables* is the same as the agreement here, so there can be little or no comparison regarding the Arbitrator's jurisdiction." We note that the above-quoted portion of the CBA in *Jefferson County* reveals that the arbitrator in that case was authorized to decide "[a]ll disputes concerning the proper interpretation and

4

arbitrator did not exceed her authority by deciding the timeliness issue.

The City also argues that the arbitrator's determination that the grievance was timely constitutes a "clear and manifest error of law." To the extent this argument may be construed as an invocation of the common-law standard of "gross mistake," the argument fails. Gross mistake is a mistake that implies bad faith or failure to exercise honest judgment. *See Callahan & Assocs. v. Orangefield Indep. Sch. Dist.*, 92 S.W.3d 841, 844 (Tex. 2002). The City does not direct us to any evidence that the arbitrator acted dishonestly or in bad faith, precluding this argument.[2] *See id.* We overrule the City's first issue.

## C. Scope of issue before arbitrator

In its second issue, the City asserts the arbitrator exceeded her jurisdiction by deciding an issue that was not made the basis of the Association's grievance—that the terminated firefighters had a right to an administrative appeal. The City asserts the Association never sought a determination of whether the terminated individuals had a right to an administrative appeal of their terminations, but the arbitrator found they were "improperly terminated without appeal."

The grievance read as follows:

application of" the CBA—strikingly similar to CBA article 14 in this case, which grants the arbitrator authority regarding "the interpretation and application of the terms" of the CBA. Regardless, *Jefferson County* stands for the general proposition that the arbitrator may act within the scope of authority granted by the CBA, which is the basis of our analysis here.

[2] To the extent the City argues that the arbitrator's decision on timeliness constitutes a "manifest disregard of the law," this court has characterized that theory as a creature of federal common law that applies only in FAA proceedings, and even in that context has been disavowed. *See Action Box Co., Inc. v. Panel Prints, Inc.*, 130 S.W.3d 249, 252 (Tex. App.—Houston [14th Dist.] 2004, no pet.). In any event, even if "manifest disregard of the law" were a common-law vacatur ground, the result would be the same. Manifest disregard of the law is more than mere error or misunderstanding with respect to the law; rather, the standard requires a showing that the arbitrator clearly recognized the applicable law but chose to ignore it, a showing the City has not made. *See Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 252 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

The City of Houston has unilaterally changed the working conditions of certain Houston firefighters by unilaterally implementing new job requirements regarding paramedic credentialing. Specifically, the City is now requiring members to successfully complete paramedic school, paramedic certification from the Texas Department of State Health Services (TDSHS), and be credentialed by a Physician Director as a Paramedic.

The arbitrator framed the issue as follows:

Has the City impermissibly violated the Maintenance of Standards article of the CBA, which retains all unenumerated privileges and working conditions enjoyed by Houston firefighters as of ratification of the CBA, when it unilaterally denied the appeal rights of permanent members by summarily terminating them for failure to satisfy the paramedic job requirement?

The arbitrator ultimately found:

Therefore, we find that . . . the working conditions were changed because the consequences of failing to qualify now resulted, for the first time, in termination without hearing rights. We find that this indeed violated Article 5, Maintenance of Standards.[3]

The issue the arbitrator decided was the issue submitted for her consideration—were working conditions changed by the new job requirements regarding paramedic credentialing? The arbitrator determined that the new job requirements changed working conditions because the consequences of failing to meet the paramedic requirements changed, thereby violating CBA article 5. The

---

[3] CBA article 5, section 1 (Maintenance of Standards) reads:

All economic benefits, privileges, and working conditions which are properly and lawfully in effect in the Houston Fire Department, as to matters subject to mandatory bargaining under Chapter 174 [The Fire and Police Employee Relations Act], and enjoyed by the Firefighters of the bargaining unit as of the effective date of this Agreement, but which are not included in this Agreement (including the foregoing Management Rights Article), shall remain unchanged for the duration of this Agreement, so long as those benefits, privileges, and working conditions do not interfere with the operation of the Department.

inability to "appeal," or have a hearing, concerning termination was one of the changed consequences under article 5. As this analysis of the terms of the CBA was within the scope of the arbitrator's authority, we overrule the City's second issue. *See Jefferson Cty.*, 546 S.W.3d at 674.

## D. Modification of state law

In its third issue, the City asserts that Local Government Code chapter 143 does not provide a right of administrative appeal to a firefighter who is terminated for failing to meet conditions of employment. Tex. Loc. Gov't Code Ann. §§ 143.001–.363 (municipal civil service for firefighters and police officers). The City then argues that, because chapter 143 controls over a CBA unless the CBA specifically provides otherwise, *see* Tex. Loc. Gov't Code Ann. § 174.006(a), and because this CBA did not specifically modify chapter 143 to provide for such an administrative hearing, the arbitrator exceeded her jurisdiction by determining that the terminated individuals should have a post-termination hearing, "result[ing] in a modification of state law that was not contracted for by the parties."

The City's argument that the arbitrator "modified" state law, however, boils down to a contention that the arbitrator got the law wrong. Such an argument is beyond the scope of our review. "A complaint that the arbitrator decided the issue incorrectly or made mistakes of law, however, is not a complaint that the arbitrator exceeded her powers." *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 830 (Tex. App.—Dallas 2009, no pet.) (citing *Pheng Invs., Inc. v. Rodriquez*, 196 S.W.3d 322, 329 (Tex. App.—Fort Worth 2006, no pet.)). As above, the arbitrator based her award on the fact that working conditions changed in violation of CBA article 5 because "never before had a permanent employee been terminated without hearing rights for failure to pass the paramedic credentialing requirement." This analysis of the terms of the CBA was within the

7

scope of the arbitrator's authority, and we accordingly overrule the City's third issue. *See Jefferson Cty.*, 546 S.W.3d at 674.

## E. Remedy of reinstatement

In its fourth issue, the City asserts the arbitrator had no jurisdiction to order reinstatement of the terminated employees because the CBA did not specifically grant the arbitrator the authority to reinstate. The City cites *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960), as its sole case in support of this assertion. In that case, however, the United States Supreme Court rejected the argument that, because the collective bargaining agreement did not provide for a specific remedy, the award was not based on the contract. *See* 363 U.S. at 598–99. Rather, *Enterprise Wheel* and its progeny "make it abundantly clear that where the contract is not explicit concerning the proper remedy, the arbitrator is given wide latitude in fashioning an appropriate remedy." *Mogge v. Int'l Ass'n of Machinists*, 454 F.2d 510, 514–15 (7th Cir. 1971) (citing *Enterprise Wheel*, 363 U.S. at 597, among other cases).

Texas courts likewise have reached the conclusion that "an arbitrator has broad discretion in fashioning an appropriate remedy." *Forest Oil Corp. v. El Rucio Land & Cattle Co., Inc.*, 446 S.W.3d 58, 82 (Tex. App.—Houston [1st Dist.] 2014), *aff'd*, 518 S.W.3d 422 (Tex. 2017); *see Daniewicz v. Thermo Instrument Sys., Inc.*, 992 S.W.2d 713, 718 (Tex. App.—Austin 1999, pet. denied) ("[A]rbitrators have traditionally enjoyed broad leeway to fashion remedies."). In the CBA, the parties do not prohibit reinstatement as a remedy. The common-law grounds for vacating an arbitration award are exceedingly narrow and do not include an arbitrator's error in applying the law. *See Jefferson Cty.*, 546 S.W.3d at 674. We conclude that the arbitrator did not exceed her authority in ordering reinstatement of the terminated employees. *See id.* (holding that arbitrator did not

exceed his authority in ordering reinstatement of terminated deputy constables on seniority basis).

We overrule the City's fourth issue.

### III.  CONCLUSION

We affirm the trial court's judgment.


/s/     Charles A. Spain
            Justice

Panel consists of Chief Justice Frost and Justices Spain and Poissant.